IN THE UNITED STATES DISTRICT COURT     **FILED**
FOR THE DISTRICT OF KANSAS
(KANSAS CITY DOCKET)                     MAY 2 6 2006

RALPH L. DeLOACH, Clerk
By _mfmaf_____ Deputy

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br><br>Plaintiff,   )<br><br>vs.   )<br><br>VERNON KEITH REED   )<br>                              and   )<br>RICHARD MICHAEL TAYLOR   )<br>a.k.a. R.M. TAYLOR,   )<br><br>Defendants.   ) | No. 06-200_68_-01/02-_CM_ - _JPO_<br><br>**SEALED** |

## INDICTMENT

The Grand Jury charges:

At all times relevant to the allegations in this Indictment:

### Background

1. The United States Department of Labor is a cabinet level department within the executive branch of the federal government responsible for administering and enforcing federal laws for workplace activities.

2. The International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers, and Helpers (Boilermakers) is an international union with its headquarters located in Kansas City, Kansas.

3. Contributing employers submit moneys to the Boilermaker-Blacksmith National Pension Trust, the Boilermakers National Health & Welfare Fund, and the Boilermakers National Annuity Trusts. These Trusts and Funds fall within the definitions of Title I of the

Employment Retirement Income Security Act of 1974 as codified at Title 29, United States Code, Sections 1002(1) and (2). These Trusts and Funds comprise the Boilermakers National Funds (BNF), whose headquarters is located adjacent to the Boilermakers in Kansas City, Kansas.

4.    The Boilermaker-Blacksmith National Pension Trust and the Boilermakers National Annuity Trusts are employee pension benefit plans subject to the provisions of Title I of the Employee Retirement Income Security Act of 1974.

5.  The Boilermakers National Health & Welfare Fund is a private plan and contract, affecting commerce, under which medical benefits, items, and services are provided to Fund participants, which constitutes a health care benefit program as defined by Title 18, United States Code, Section 24(b).

6. From 1999 through 2001, the BNF Joint Committee on Administration, comprised of members from the Board of Trustees, authorized a renovation project at the BNF headquarters building in the amount of approximately $920,000.00. The funds for the renovation project were expended from the Trusts and Funds that comprise the BNF, which totaled approximately $2.3 million, yet the actual value of the work performed was approximately $1.5 million.

7.    The BNF Board of Trustees was comprised of individuals selected by the Boilermakers and its members to oversee the administration of the BNF. These individuals were selected from companies that employ members of the Boilermakers as well as members of the Boilermakers.

8.  The Joint Committee on Administration was comprised of BNF Board of Trustees members, which administered arrangements for the BNF regarding its location, rental

2

space, administration functions, supervision, personnel, equipment, and miscellaneous expenses, among other duties.

9. Beginning in June 1981, VERNON KEITH REED (REED) began employment with the BNF as the Assistant Administrator of the BNF. In 1983, he became the Executive Administrator of the BNF. As such, he was a fiduciary who occupied a position of trust pursuant to Title 29, United States Code, Sections 1104 and 1106. As a fiduciary, his duties were, among others:

  a. To act solely in the interests of the participants of the BNF;

  b. To avoid acting in his own personal self-interest; and

  c. To avoid acting on behalf of any party whose interests were adverse to the interests of the BNF.

10. RICHARD MICHAEL TAYLOR a.k.a. R.M. TAYLOR (TAYLOR) was the President or Owner of four companies, Deramus Street Properties, Inc. (DSP), Brothers Mechanical Contractors (BMC), International Fabricators and Erectors, Inc. (IF&E), and Woodley-Griggs Boiler Repair, L.L.C. (WG), the last three of which, were companies doing business in the construction industry in Wyandotte County, Kansas, and elsewhere. From approximately 1999 though 2001, TAYLOR, doing business through DSP, BMC, IF&E, and WG, acted as the general contractor and sub-contractors, on the renovation project at the BNF.

11. REED and TAYLOR met one another before 1993, and since that time, they have had a close personal relationship.

12. Deramus Street Properties, Inc. (DSP) was a company started by TAYLOR on or about April 20, 1993, so TAYLOR could borrow money to purchase real estate located

3

at 1710 Southern, Kansas City, Missouri.

13.  Brothers Mechanical Contractors (BMC) was a company started by TAYLOR through his company Woodley-Griggs Boiler Repair, on or about December 15, 1999, which provided commercial, residential, and industrial Heating, Ventilation, and Air Conditioning (HVAC) installation and HVAC and boiler repair, replacement, and maintenance services.

14.  International Fabricators & Erectors, Inc. (IF&E) was a company started by TAYLOR on or about April 23, 1997, which provided engineering, installation, and fabrication in various industries, including automotive, bulk handling systems, package conveyors, structural installations, and paper products.

15.  Woodley-Griggs Boiler Repair, L.L.C. (WG) was a company operated by TAYLOR, which provided repairs on boilers, heat exchangers, pressure and power piping, complete pressure vessel fabrication, structures, stacks and complete shop fabrication on these units.

<u>Count 1</u>

16.  Paragraphs one through fifteen are incorporated as though fully set out herein.

17.  Beginning in or about January 1999, the exact date being unknown to the Grand Jury, and continuing to on or about October 16, 2001, both dates being approximate and inclusive, in the District of Kansas, the defendants,

VERNON KEITH REED
and
RICHARD MICHAEL TAYLOR a.k.a. R.M. TAYLOR,

knowingly and intentionally conspired and agreed together and with each other, and with other persons known and unknown to the Grand Jury, to commit the following offenses

4

against the United States:

a.  Embezzle and steal the moneys, funds, securities, premiums, credits, property, and other assets of the BNF from the Boilermaker-Blacksmith National Pension Trust, the Boilermakers National Health & Welfare Fund, and the Boilermakers National Annuity Trusts in violation of Title 18, United States Code, Section 664;

b.  Embezzle and steal the moneys, funds, securities, premiums, credits, property, and other assets of the BNF from the Boilermakers National Health & Welfare Fund in violation of Title 18, United States Code, Section 669; and

c.  Offer and acceptance of fee and kickback to administrator of an employee welfare benefit plan and employee pension benefit plan in violation of Title 18, United States Code, Section 1954.

**Manner and Means**

18.  It was part of the conspiracy that REED utilized his authority as administrator of the BNF to direct the majority of the renovation work of the BNF building without a competitive bid process to his personal friend, TAYLOR.  Additionally, REED did not utilize construction drawings, project specifications, detailed contracts with design teams or contractors, nor obtain a master construction plan or architectural drawings to ensure the work desired was obtained.

19.  It was further part of the conspiracy that REED utilized his authority as administrator of the BNF to authorize payments to TAYLOR for the renovation work of the BNF building at costs that greatly exceeded the value of the work completed.

20.  It was further part of the conspiracy that TAYLOR designated his company DSP

5

as the general contractor for the renovation work at the BNF. TAYLOR then designated his other companies as subcontractors to perform the renovation work and after his subcontracting companies submitted their invoices to DSP, then DSP increased the amount of the invoice when it was submitted to the BNF even though DSP had provided no additional services. In some instances, this increase in invoices resulted in a windfall to TAYLOR of double the cost of the work performed by the subcontracting company.

21.  It was further part of the conspiracy that TAYLOR submitted invoices to BNF for renovation work, which exceeded the agreed-upon amount that would be billed for specific jobs. It was then further part of the conspiracy that REED authorized the payment of these invoices that he knew exceeded the agreed-upon amount for the specific jobs.

22.  It was further part of the conspiracy that REED utilized his authority at the BNF to pay TAYLOR at least $182,000 more than the value of work performed by TAYLOR and his companies with REED ultimately authorizing approximately $800,000 more in payments than the value of work performed during the entire renovation of the BNF.

23.  It was further part of the conspiracy that REED utilized his authority as administrator of the BNF to squelch any and all questions about the propriety of TAYLOR performing the remodeling work at the BNF building and the exorbitant payments made to TAYLOR for the remodeling work at the BNF.

24.  It was further part of the conspiracy that TAYLOR leased a new 2000 Ford F-150 Harley Davidson Edition pickup truck through DSP, which he then gave to REED for REED'S utilization.

### Overt Acts

25. In furtherance of this conspiracy and to effect and accomplish the objects of it,

one or more of the defendants or conspirators, both indicted and unindicted, committed, among others, the following overt acts in the District of Kansas and elsewhere:

a. On or about February 17, 1999, REED hired TAYLOR through TAYLOR'S companies to perform work on the renovation project at the BNF without opening the project to a competitive bidding process.

b. On or about July 1, 1999, TAYLOR designated DSP to be the general contractor for the BNF renovations, which allowed TAYLOR to hire his other companies as subcontractors during the renovation work.

c. From on or about June 15, 1999, through on or about October 15, 2001, TAYLOR failed to forward in a timely manner the employer contributions to the BNF, required under the collective bargaining agreement for each employee of WG. During that same time period, REED directed that no notices of delinquency be sent from the BNF to TAYLOR, that no notice of the delinquencies be reported to the legal counsel for BNF for collection purposes, and that no liquidated damages or interest be assessed for these late contributions by TAYLOR, which amounted to approximately $50,000.

Billing in Excess of Agreed-Upon Amount

d. On or about January 21, 2000, IF&E submitted a quote of $240,000 to the BNF for Job 99-1351, which included third floor renovations. The terms of the quote required 30% to be paid initially with the remaining to be paid in progress billings as the phases were completed. On or about January 25, 2000; March 17, 2000; and May 17, 2000, IF&E submitted three invoices to the BNF totaling $240,000. However, the work to complete Job 99-1351 was not finalized until on or about July

7

11, 2001.

e. On or about February 4, 2000, TAYLOR submitted an additional invoice in the amount of approximately $25,000, from IF&E to the BNF for work related to Job 99-1351, although the invoice referenced a different Job.

f. On or about September 26, 2000, TAYLOR submitted an additional invoice from DSP to the BNF for work related to Job 99-1351, even though he had been paid the full amount for Job 99-1351. In turn, REED approved the payment of this invoice even though it exceeded the agreed upon amount of $240,000 for Job 99-1351.

g. On or about October 31, 2000, TAYLOR submitted an additional invoice in the amount of approximately $120,000, from DSP to the BNF for work related to Job 99-1351, even though he had been paid the full amount for Job 99-1351. In turn, REED approved the payment of this invoice even though it exceeded the agreed upon amount of $240,000 for Job 99-1351.

h. On or about November 30, 2000, TAYLOR submitted an additional invoice in the amount of approximately $44,708.32, from DSP to the BNF for work related to Job 99-1351, even though he had been paid the full amount for Job 99-1351. In turn, REED approved the payment of this invoice even though it exceeded the agreed upon amount of $240,000 for Job 99-1351.

i. On or about December 11, 2000, TAYLOR submitted an additional invoice in the amount of approximately $75,000, from DSP to the BNF for work related to Job 99-1351, even though he had been paid the full amount for Job 99-1351. In turn, REED approved the payment of this invoice even though it exceeded the

agreed upon amount of $240,000 for Job 99-1351.

j. On or about December 21, 2000, TAYLOR submitted an additional invoice in the amount of approximately $48,287.09, from DSP to the BNF for work related to Job 99-1351, even though he had been paid the full amount for Job 99-1351. In turn, REED approved the payment of this invoice even though it exceeded the agreed upon amount of $240,000 for Job 99-1351.

k. On or about February 7, 2001, TAYLOR submitted an additional invoice in the amount of approximately $7,500, from DSP to the BNF for work related to Job 99-1351, even though he had been paid the full amount for Job 99-1351. In turn, REED approved the payment of this invoice even though it exceeded the agreed upon amount of $240,000 for Job 99-1351.

l. On or about March 21, 2001, TAYLOR submitted an additional invoice in the amount of approximately $44,000, from DSP to the BNF for work related to Job 99-1351, even though he had been paid the full amount for Job 99-1351. In turn, REED approved the payment of this invoice even though it exceeded the agreed upon amount of $240,000 for Job 99-1351.

m. On or about May 16, 2001, TAYLOR submitted an additional invoice in the amount of approximately $30,000, from DSP to the BNF for work related to Job 99-1351, even though he had been paid the full amount for Job 99-1351. In turn, REED approved the payment of this invoice even though it exceeded the agreed upon amount of $240,000 for Job 99-1351.

n. On or about July 11, 2001, TAYLOR submitted an additional invoice in the amount of approximately $16,115.22, from DSP to the BNF for work related to Job

9

99-1351, even though he had been paid the full amount for Job 99-1351.  In turn, REED approved the payment of this invoice even though it exceeded the agreed upon amount of $240,000 for Job 99-1351.

o.  On or about March 10, 2000, BMC submitted a quote to the BNF for Job 00-252, which included the removal of two air conditioning units from the fifth floor and reinstallation on the second floor.  The quote required BMC to submit invoices based on a time and material basis, with a clause that Job 00-252 would not exceed $50,000.  TAYLOR submitted invoices to the BNF from BMC and DSP for Job 00-252 totaling approximately $64,056.10, and REED authorized payment in full.

p.  On or about April 20, 2000, DSP submitted a quote to the BNF for Job 00-344, for remodeling of second and third floor bathrooms.  The quote required DSP to submit invoices based on a time and material basis, with a clause that Job 00-344 would not exceed $75,000.  TAYLOR submitted invoices to the BNF from DSP for Job 00-344 totaling approximately $89,987.50, and REED authorized payment in full.

Inflated Invoices

q.  On or about March 9, 1999, IF&E completed Job 98-713 for structural support for the stairwell from the second to the third floor of the BNF as part of the renovation work.  On or about February 17, 1999; February 23, 1999; and March 9, 1999, IF&E billed the BNF a total of $29,970 for the work performed.  This billing included a markup by IF&E of approximately $4,732.77, as well as a management fee for DSP of approximately $11,000.

r.  On or about August 15, 2000, BMC completed Job 00-252 for removal of

10

two air conditioning units from the fifth floor and reinstallation on the second floor of the BNF as part of the renovation work. On or about March 13, 2000; March 31, 2000; April 17, 2000; and April 27, 2000, BMC billed the BNF a total of $75,000 for the work performed. This billing included a markup by BMC of approximately $20,081.42. In addition to the BMC billing, on or about August 15, 2000, DSP billed the BNF a management fee for this job of approximately $14,056.10.

s. On or about August 15, 2000, BMC completed Job 00-344 for second and third floor bathroom renovations of the BNF as part of the renovation work. On or about April 20, 2000; May 5, 2000; June 9, 2000; and August 15, 2000, DSP billed the BNF a total of $89,987.50 for the work performed. This billing included a markup for BMC of approximately $21,825, as well as a management fee for DSP of approximately $13,998.54.

t. On or about July 17, 2001, BMC completed Job 01-1207 for remodeling fourth and fifth floor restrooms of the BNF as part of the renovation work. On or about January 8, 2001; February 7, 2001; and July 17, 2001, DSP billed the BNF a total of $130,000 for the work performed. This billing included a markup for BMC of approximately $33,277.97, as well as a management fee for DSP of approximately $25,000.

u. On or about July 11, 2001, BMC completed Job 01-1305 on the northeast corner of the fifth floor of the BNF as part of the renovation work. On or about May 29, 2001, and June 30, 2001, BMC billed DSP for the work performed. In turn, on or about May 16, 2001, and July 11, 2001, DSP billed the BNF a total of $33,710.73 for the work BMC performed. This billing included a markup for BMC of

11

approximately $7,079.26, as well as a management fee for DSP of approximately $10,113.21.

v. On or about June 4, 2001, TAYLOR submitted a quote through DSP to the BNF for installation of a reception area door. This quote included an estimate based on time and material for $75,000. Then, on or about June 8, 2001, TAYLOR submitted an invoice from DSP to the BNF for the entire $75,000, even though no work had yet begun on the door. On or about June 8, 2001, REED approved payment of the invoice for $75,000, despite knowledge that this work had not commenced.

Kickback

w. On or about July 19, 2000, TAYLOR through DSP leased a 2000 Ford F-150 Harley Davidson Edition pickup truck at a monthly cost of $652, from Midway Ford Truck Center, Kansas City, Missouri. This truck was valued at $33,870, when the lease began, and was driven by REED until on or about December 12, 2001, when it was returned to the dealership.

x. TAYLOR through DSP provided insurance for the 2000 Ford F-150 Harley Edition pickup truck through April 30, 2001.

26. As additional overt acts, the Grand Jury incorporates by this reference the allegations set forth in Counts 2 through 9 of the Indictment as though fully set forth at this point.

27. This was all in violation of Title 18, United States Code, Section 371.

Count 2

28. Paragraphs one through fifteen are incorporated as though fully set out herein.

12

29. On or about June 8, 2001, in the District of Kansas, the defendants,

VERNON KEITH REED<br>
and<br>
RICHARD MICHAEL TAYLOR a.k.a. R.M. TAYLOR,

embezzled, stole, and willfully abstracted and converted to their own use and the use of another in the approximate amount of $75,000, the moneys, funds, securities, premiums, credits, property and other assets of the Boilermakers National Health & Welfare Fund, an employee welfare benefit plan and the Boilermaker-Blacksmith National Pension Trust and the Boilermakers National Annuity Trust, employee pension benefit plans, each subject to Title I of the Employee Retirement Income Security Act of 1974.

30. This was all in violation of Title 18, United States Code, Sections 2 and 664.

Count 3

31. Paragraphs one through fifteen are incorporated as though fully set out herein.

32. On or about July 11, 2001, in the District of Kansas, the defendants,

VERNON KEITH REED<br>
and<br>
RICHARD MICHAEL TAYLOR a.k.a. R.M. TAYLOR,

embezzled, stole, and willfully abstracted and converted to their own use and the use of another in the approximate amount of $7,210.73, the moneys, funds, securities, premiums, credits, property and other assets of the Boilermakers National Health & Welfare Fund, an employee welfare benefit plan and the Boilermaker-Blacksmith National Pension Trust and the Boilermakers National Annuity Trust, employee pension benefit plans, each subject to Title I of the Employee Retirement Income Security Act of 1974.

33. This was all in violation of Title 18, United States Code, Sections 2 and 664.

Count 4

34. Paragraphs one through fifteen are incorporated as though fully set out herein.

35. On or about July 11, 2001, in the District of Kansas, the defendants,

**VERNON KEITH REED**
and
**RICHARD MICHAEL TAYLOR a.k.a. R.M. TAYLOR,**

embezzled, stole, and willfully abstracted and converted to their own use and the use of another in the approximate amount of $16,115.22, the moneys, funds, securities, premiums, credits, property and other assets of the Boilermakers National Health & Welfare Fund, an employee welfare benefit plan and the Boilermaker-Blacksmith National Pension Trust and the Boilermakers National Annuity Trust, employee pension benefit plans, each subject to Title I of the Employee Retirement Income Security Act of 1974.

36. This was all in violation of Title 18, United States Code, Sections 2 and 664.

Count 5

37. Paragraphs one through fifteen are incorporated as though fully set out herein.

38. On or about July 17, 2001, in the District of Kansas, the defendants,

**VERNON KEITH REED**
and
**RICHARD MICHAEL TAYLOR a.k.a. R.M. TAYLOR,**

embezzled, stole, and willfully abstracted and converted to their own use and the use of another in the approximate amount of $25,000, the moneys, funds, securities, premiums, credits, property and other assets of the Boilermakers National Health & Welfare Fund, an employee welfare benefit plan and the Boilermaker-Blacksmith National Pension Trust and the Boilermakers National Annuity Trust, employee pension benefit plans, each subject to Title I of the Employee Retirement Income Security Act of 1974.

39. This was all in violation of Title 18, United States Code, Sections 2 and 664.

14

## Count 6

40. Paragraphs one through fifteen are incorporated as though fully set out herein.

41. On or about June 8, 2001, in the District of Kansas, the defendants,

**VERNON KEITH REED**
and
**RICHARD MICHAEL TAYLOR a.k.a. R.M. TAYLOR,**

embezzled, stole, and willfully abstracted and converted to their own use and the use of

another in the approximate amount of $75,000, the moneys, funds, securities, premiums,

credits, property, and other assets of the Boilermakers National Health & Welfare Fund,

a health care benefit program.

42. This was all in violation of Title 18, United States Code, Sections 2 and 669.

## Count 7

43. Paragraphs one through fifteen are incorporated as though fully set out herein.

44. On or about July 11, 2001, in the District of Kansas, the defendants,

**VERNON KEITH REED**
and
**RICHARD MICHAEL TAYLOR a.k.a. R.M. TAYLOR,**

embezzled, stole, and willfully abstracted and converted to their own use and the use of

another in the approximate amount of $7,210.73, the moneys, funds, securities, premiums,

credits, property, and other assets of the Boilermakers National Health & Welfare Fund,

a health care benefit program.

45. This was all in violation of Title 18, United States Code, Sections 2 and 669.

## Count 8

46. Paragraphs one through fifteen are incorporated as though fully set out herein.

47. On or about July 11, 2001, in the District of Kansas, the defendants,

VERNON KEITH REED
and
RICHARD MICHAEL TAYLOR a.k.a. R.M. TAYLOR,

embezzled, stole, and willfully abstracted and converted to their own use and the use of

another in the approximate amount of $16,115.22, the moneys, funds, securities,

premiums, credits, property, and other assets of the Boilermakers National Health &

Welfare Fund, a health care benefit program.

48.  This was all in violation of Title 18, United States Code, Sections 2 and 669.

<u>Count 9</u>

49.  Paragraphs one through fifteen are incorporated as though fully set out herein.

50.  On or about July 17, 2001, in the District of Kansas, the defendants,

VERNON KEITH REED
and
RICHARD MICHAEL TAYLOR a.k.a. R.M. TAYLOR,

embezzled, stole, and willfully abstracted and converted to their own use and the use of

another in the approximate amount of $25,000, the moneys, funds, securities, premiums,

credits, property, and other assets of the Boilermakers National Health & Welfare Fund,

a health care benefit program.

51.  This was all in violation of Title 18, United States Code, Sections 2 and 669.

A TRUE BILL.

Dated: 5/25/06

OREMAN

for ERIC F. MELGREN

16

United States Attorney
District of Kansas
1200 Epic Center
301 North Main
Wichita, Kansas 67202
Ks. S. Ct. No. 12430


(It is requested that trial of the above captioned case be held in Kansas City, Kansas.)



The Court acknowledges the return of this indictment in open court.


_____
UNITED STATES DISTRICT JUDGE
District of Kansas

Penalties:

|  |  |
|---|---|
| Cts. 1 - 5: | NMT 5 years imprisonment; NMT $250,000.00 fine; NMT 3 years supervised release; $ 100.00 special assessment |
| Cts. 6 - 9: | NMT 10 years imprisonment; NMT $250,000.00 fine; NMT 3 years supervised release; $ 100.00 special assessment |

18